Whenever you're ready, counsel. Good morning, Your Honors, and may it please the Court. Roger Perlstadt for Plaintiff Appellant Daniel Rodriguez. I'd like to reserve about three minutes of my time for rebuttal. It may seem obvious, especially in light of the case we just heard, but I think it bears repeating that the VPPA is a privacy statute. It protects our privacy in the choices we make in what movies to watch, which can reveal very personal aspects of our lives. Our likes and dislikes, our religious and political views, interests, habits, preferences, all sorts of things. And the statute protects this privacy in two ways. First, it prevents the companies from whom we get our movies from intentionally disclosing what we watch to others without our consent. So Sony or Netflix or Amazon can't tell anyone else what movies we choose to watch without our consent. And that's subsection B, the disclosure provision. But second, and just as importantly, the statute protects against the unintentional disclosure of private information by prohibiting those companies from even holding onto that information any longer than necessary. And in fact, the statute says that companies must destroy records containing our movie choices as soon as practicable. That's subsection E, the destruction of old records or retention provision. And the reason for this provision is because just keeping those records around makes them vulnerable to accidental disclosure through, for example, carelessness or rogue employees or hackers. And in fact, we don't have to look very far to find examples of such incidents. Databases held by various Sony corporations have been hacked, including the PlayStation Network at issue here, revealing plaintiffs' private movie rental history who knows where. Ginsburg. The only difficulty I have with your argument is whether or not there's a private cause of action embedded in that section. What's your response to that? Our argument is twofold, and it's based primarily on the plain language of the statute. The statute's enforcement provision, subsection 2710C, states, quote, "'Any person aggrieved by any act of a person in violation of this section may bring a civil action.'" And this section means section 2710, which includes the retention provision. Thus, any person aggrieved by violation of the retention provision, which is a violation of this section, of section 2710, may bring a civil action. Well, you say it includes the retention provision, but there are others who disagree with you. Where's the flaw in Judge Posner's analysis of the statute? I think there's two problems with the Stirk decision out of the Seventh Circuit. And I should point out that even the Seventh Circuit there expressly admitted uncertainty with its opinion. It said, "'We cannot be certain that we have divined the legislative meaning correctly.'" And I think the two problems with the Stirk decision are, first, Stirk fails to address the plain language of subsection C, the enforcement provision. The Seventh Circuit said, quote, "'The biggest interpretive problem is created by the statute's failure to specify the scope of subsection C.' But with all due respect to the Seventh Circuit, that's just wrong. The plain language of subsection C specifies its scope by saying it applies to any violation of this section, i.e., section 2710, which includes the retention provision. The second problem with Stirk is it's based on a faulty premise, that premise being that unlawfully retained movie rental records, quote, "'remain secreted away in the video service provider's files.'" But as we've seen with Sony and others, that's not at all what happens. Those files can and do get hacked or otherwise unintentionally disclosed. And it was precisely this risk, this risk of unintentional disclosure, that Congress wanted to avoid by enacting the retention provision. On page 15 of the Senate report that we cite in our briefs, Congress said, quote, "'The purpose of the retention provision is to reduce the chance that an individual's privacy will be invaded.'" So the unlawful retention of this private information leads to an increased risk that it will be unintentionally disclosed. And you really haven't addressed Judge Posner's analysis. The retention provision was added at a later time. The juxtaposition of that provision vis-a-vis the private action provision seems to suggest that it was not intended that there be a private right of action for the retention issue. I respectfully disagree with the Seventh Circuit's analysis there. First of all, the order of the subsections cannot trump the plain language of the statute. I agree. But the language isn't plain. That's the problem, is that the language is not plain. That's why we have to resort to some type of interpretation to determine what exactly is meant by the language in the statute. Well, I think the words are plain. The words say this section. Any violation of this section can create a cause, you can have a cause of action  But you can't, you have to read the statute as a whole to see if it's ambiguous. This section, what does this section mean in terms of the entire language of the statute? If you just say this section, it doesn't really tell you a lot. Well, I respectfully disagree with that. I think this section is plain. Our reading, you don't have to rewrite the section, rewrite the statute. But why would it be in the middle of the statute if it says this section? Then you have other subsections below it. That's not usually what you see when a statute is drafted and you have a remedy provision at the end. It's fairly clear that it encompasses everything before it. But when you have the remedy provision in the middle of the statute, what does that mean? Well, I, like I said, I agree that this is not the most clearly ordered statute. But there are other statutes that are ordered oddly like this. The Fair Credit Reporting Act does exactly the same thing. The enforcement provision of that is subsection 1681N and O. And this Court has held that that enforcement provision applies to substantive provisions both before and after. But we didn't say it was plain. No, I'm not saying it wasn't plain. You said, yeah, you said the plain language. Well, we had to go through some interpretation to determine, you know, what was actually included within the remedial provisions, quite a bit of interpretation, as a matter of fact. So that's why I'm having a little bit of difficulty with your argument that the plain language of the statute carries the day. When I say plain language, I'm simply referring to the phrase this section. Sony's reading and the district court's reading would require this Court to rewrite those words, this section, to mean subsection B. Any violation of subsection B or any violation of the subsections above would create a cause of action. When I say plain language, I mean just this section. Help me with the chronology here. As I understand it, Congress amended this statute. Was it before or after the Stirk Court had issued its opinion? It was amended after. After Stirk? In 2013. So do we attach any significance to the fact that Congress did not make any change to the location of the enforcement provision in the statute in light of the Seventh Circuit's interpretation, which was then outstanding? No. I don't think we can attach any significance to that. I thought we had case law that says that we presume that when Congress amends a statute after judicial precedent has interpreted the statute, if Congress doesn't make the change, that it must agree with the extant jurisprudence. Have I misstated the law? Well, the Supreme Court in the Central Bank of Denver case that we cite says that failure to overturn case law does not equal acquiescence. And in that case, it cites Justice Frankfort saying we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle. I feel the ground moving under my feet as I ask that question. This is not the place to say that. But, I mean, it is curious. If it is indeed a drafting error, why didn't Congress fix it when it had the opportunity to do so? I don't know. And like Justice Frankfort has said, I'm not sure we can draw anything from that. The Supreme Court says we, failure to overturn doesn't acquiesce. This wasn't, I think some of the Ninth Circuit law you might be referring to, there was overwhelming case law holding one thing. This is only the Stirk decision. And the other, I'm sorry. I was going to say, the other thing that gives me pause is the fact that in looking at the legislative history, there's no discussion whatsoever with regard to liability for improper detention or a cause of action for improper detention. It's all focused on improper disclosures, a la Judge Bork. I agree. The disclosure provision may have, or the disclosure concern may have been the driving concern behind this. Obviously, the Bork issue was the concern. And the other problem I have is I don't know what the meaning is in, what is it, subsection E of the phrase that the date, it has to be destroyed no later than one year from the date the information is no longer necessary for the purpose for which it was collected. And there's no definition in the statute of what that means. So I think, I feel like there's two questions pending, and if I might address them in order. Sure. With respect to whether the legislative history addresses whether there's a cause of action for retention. If you really delve into the legislative history, if you look at the House version of this bill, the actual bill that was enacted mirrors the Senate version of the bill with the odd ordering. The House version of the bill, actually it had the retention and the nondisclosure provisions in the same subsection prior, before the enforcement provision. And in the joint subcommittee hearings on those two bills, those bills were treated as equivalent. So it's not odd at all for Congress to think that there would be a cause of action for retention. And, in fact, the House version of the bill ordered it in what I think we all agree would be the more logical order. But the final version removed it or moved it to the location where it presently sits, did it not? Well, it adopted the Senate version of the bill. But in those joint hearings, there's absolutely no discussion of why it would be moved or whether there would be a violation or a cause of action for one and not the other. So I just don't think there's anything to be drawn from that. Okay. But can you answer the second question, then, and that is how do I know when the information is no longer necessary for the purposes for which it was collected? With respect to our case, which is all I can answer, I think, is we allege plaintiff rented movies from Sony. He had access to those movies for 30 days. And then as soon as the 30 days are up, there's no reason for Sony to keep that information. Well, the statute contemplates one, does it not, and that is pursuant to a court order or a pending request for access to such information. Right. If there's a pending request or a court order, then sure, then it's not practicable to destroy that information. The statute says that information must be destroyed as soon as practicable. And then the second clause says, but no later than a year after it's no longer necessary. But, I mean, depending on what the nature of that court order is, that could be a very long time, could it not? Suppose it's a continuing order to disclose. And I don't want to go into national security letters and that sort of thing. That's a subject for another day. There could be a court order. But, frankly, there's no court order here. Well, we don't know. Do we know that? I thought this was judgment on the pleadings. Right. This is a motion to dismiss. Right. And so we've alleged that it's no longer necessary for the information to be retained. We allege that as soon as he was done watching them, as soon as his rental period was up, it was no longer necessary to hang on to that information, so that it should have been destroyed at that time. But the statute contemplates one reason that Netflix could, does it not? If there's a pending court order for access to that information. Sure. So if that's an affirmative defense, if they want to say, if they want to answer the complaint and say, well, there was a court order and that's why we didn't, that's why we didn't. But you're asking us to declare as a matter of law, based on the allegations of the complaint, that Sony doesn't need this information anymore. And that's not necessarily so. No. If I look at the words of the statute. I'm asking this Court to find that there's a private cause of action for violation of the retention provision. And whether or not there's an actual violation of the retention provision is an issue for discovery and summary judgment or trial. We allege that they are keeping it longer than necessary. Maybe the facts won't bear that out. Maybe there is a court order. Maybe there is a reason they need to do that. But on a motion to dismiss, we've alleged that they don't need it anymore and they must destroy it. I'm sorry. You wanted to save some time for rebuttal? Yes, Your Honor. Thank you very much. Good morning, Your Honors. Mike Rhodes for the defense. I think we're concedingly dealing with an ambiguous statute. Once we're dealing with an ambiguous statute, we're no longer in the world of plain meaning. I think there are about five interpretive rules that apply to trying to divine what the statute means when we have an ambiguous statute. Opposing counsel says that the phrase he's relying upon is clear. This section. My apologies, Your Honor. I submit to Your Honor that it is not clear. Let's start with the first of these five rules of interpreting an ambiguous statute. B-1 of the statute refers explicitly to what's called subsection D. Everybody agrees by acclamation that that is actually meant to be a reference to C. Only C and only B-1 refer to the person who can bring the civil right of action. That person is called an aggrieved person. That term appears in B-1. There's a mere provision in C-1. So I think if you just look at the internal structure, you see that there's an explicit reference back to the civil remedy provision. E does not have that. Two, we want to avoid surplusage. We want to make sure that the statutory language all means something. There's some indication that this statute is only dealing with liability for disclosure. If you look at the carve-outs, there is a permissions set forth in Section B, things that you can do to disclose. And if you look at the civil remedy provision itself, Your Honors, and if you look at C-4, for example, it states, No liability shall result from the disclosure permitted by the statute. And then if you go all the way to the end of the statute, Section F, there is a preemption comment. And what they say is, essentially, if State or local law requires that you make a disclosure, those State and local laws are not preempted. Therefore, you're permitted to make those disclosures. So in two instances in the statute, the drafters are trying to make it clear that there's a body of disclosures you might have to make, either because you're required by State or local law or you're permitted to make under the statute. And in both instances, there's no liability. Why, therefore, would there be liability for the much less culpable act of merely retaining information? Because remember, under this statute, the disclosure obligation, the disclosure liability springs from a knowing or intentional disclosure. So I would submit to the Court that the internal logic of the statute tells us that they didn't contemplate civil liability for retention. Because if they did, why wouldn't they make the same comment about preempting State and local laws that might require you to hang on to the information? If I understood the argument from Mr. Perlstadt, his response to that was, well, the consumer also needs to be protected from hackers. And if that information has been retained longer than it needs for legitimate business purposes, it's out there and available for unauthorized disclosures by people who break into the system. I would refer the Court back then to the legislative history, which is point 3, cited in the lower court opinion, in the Seventh Circuit opinion, and for the record this is the opinion cited at 806 F sub 2nd at 1068. The Court expressly notes to, I think, your prior comment, Your Honor, that there is no reference whatsoever in the legislative history. In fact, he says, the legislative history is, quote, silent regarding whether there is civil liability for a violation of the statute's information destruction requirement. And there is an explicit discussion. So, again, another, I think, signpost indicating that whatever may be the concern that we can conjure up about information sitting on a server, the question presented is not whether there's some benefit from requiring destruction, but whether the statutory language, its sequence organization, its internal logic, the legislative history lead to the conclusion that there's a private right of action. I would point again to Judge Posner's concern about Section D. If there's a private right of action, why on earth would we have the drafters holding a legislative body or judicial actors acting in a judicial capacity? Why would they be subject to a private right of action when we all know they have sovereign immunity? Counsel, why shouldn't I read that language in violation of this section to mean Section 2710, as opposed to subsection, what does it be? Yes, Your Honor. Has the improper disclosure. The question presented is whether that reference to section refers to the entirety of 2710. Because it says Section 2710. It says section. I mean, look, this is not, conceitually, this is not a well-crafted statute. It has. But there's nothing ambiguous in the word section. Well, I would submit that the totality of the language suggests that that's not the right result. And there's five reasons for that. It leads to absurdity. It renders other language surplusage because they have explicit references to things. It would not make sense to have things like civil liability for judicial actors. There's nothing in the legislative history that suggests that. You've got a preemption clause that says, you know, permitted disclosures under State and local law and permitted disclosures under the statute are without liability, but we're not going to protect required or mandatory information retention. That's an imbalance that doesn't square with the statute. Counsel, I think you're asking us to rewrite the statute. Maybe this is the Scrivener's error, but you're asking us to rewrite the statute to impose liability for a violation of subsection B, little b in parentheses. I'm not asking you to rewrite the statute, Your Honor. I'm not asking you to do that. I'm asking you to stay the course with every other case that's decided this issue. There's been two district courts and two, you know, Cantrell as well as the Seventh Circuit opinion that posited on it. Every one of them says this result. And the reason they get there is they say, look, the statute is not well written. So we have to use these other interpretive rules to divine the meaning. And that's the answer. If you looked at nothing but that, I mean, even the plain meaning rule of statutory construction, Your Honor, requires that you read the entire statute and not by looking at one subsection over the other. And I'm not pretending to you that this is well written. I'm saying in the totality of the scheme of interpretive rules that we have to follow when dealing with an ambiguous statute, the prior four opinions got it right. That's what I'm saying. And I think if you look at the internal logic of the statute itself, it points the way toward that. I mean, in a sense, you're asking me the rhetorical question of, well, what happens then? And footnote 5 of the Cantrell decision out of the Sixth Circuit explicitly addresses this, which is, what happens if there is a violation of E? Who gets to enforce it? And, you know, that Court makes the observation that there's all manner of way to enforce it in other ways. It wasn't contemplated by this statute, however, that the mere retention of information and think of it this way. Look at the statute. I thought the Sixth Circuit was referring to, you know, actions by a State attorney general for consumer protection. Right. The question they were asking themselves was, is there anybody that can pick up the tab. But look at the, for example, look at, again, the internal logic. How does that help us with regard to interpreting a Federal statute? Because what they're saying is, when they went through these five interpretive rules of an ambiguous statute, they came to the conclusion that Congress did not intend for there to be a private right of action. What I'm now asking the Court to do is to kind of delve into the internal logic of the statute. For example, the statute limitation is 2 years, according to the statute. What causes the statute to run? It's from the date of the act complained of. Is the act complained of the intentional disclosure under B, or is it the act of retaining information beyond a point in time when the information is no longer necessary for the purposes it was originally gathered? At least with respect to a disclosure. And there are no pending requests or orders for that information. Right. With the first one, we can't. I don't know when the statute would start to run under that. That's my point. It's much easier to understand it running from a disclosure. We can kind of know when that is. But this is not an act. This is an omission or a failure to act. And other courts have looked at that and said, well, that's kind of interesting. That also sort of suggests to the Court that we're not dealing with a statute that was designed to have civil liability where those. Well, the statute does say no later than 1 year from the date that the information is no longer necessary. And it's not totally implausible for Mr. Prostat to say the way we should interpret that is to apply a common sense look at it and say, if Sony doesn't need to hang on to this information any longer than the 30 days that the consumer has to watch the movie, then the statute starts to run 30 days after the consumer first makes the request to view it. The problem with that argument, Your Honor, is that in the trial court, they danced around whether there was a contract or not. This is an online flow. You have to go through an online flow to enlist. There must be a contract. There's a contract. Is there not? Because otherwise the consumer wouldn't be able to get the streaming and Netflix wouldn't be able to get any money for offering its service. Sony, Your Honor, but same concept. Or Sony, I'm sorry. Yeah. No, same concept. And there is a contract. And we started this whole process by saying here it is, request for judicial notice. They then said there's no contract. The next complaint, they filed a case for breach of contract. And I said, well, wait a minute. What's the contract? Here's the contract. Right. And there's a really interesting colloquy in the below where he, what is the contract? And what it is. We'll ask him about that when he gets up on the floor. Well, because the challenge here is what's really going on is the contract gives us the permissions to keep and store and use this information, disclose it to third parties, and they know that. So as soon as they're into the role of the contract, there is no case. So we've elevated this to a fiction. Because the consumer has been warned that all these things could occur. Yes. And it's in the record whether or not you reach it or not. I would submit to you that, again, just I'm going to repeat myself over and over. The rules of interpretation and the internal logic of the language itself suggests, I think, that the word section alone shouldn't carry the day. That's really the argument we're making. Okay. All right. Sounds like you've heard enough from me. Thank you. Well, I mean, if you have another point you'd like to make. No, no. I think you understand our argument. Thank you. We don't need you to repeat it, though. You bought 15 or 20 minutes. All right. Let's hear what is the contract? Well, first of all, we haven't appealed the breach of contract claim. I'm sorry? We haven't appealed the breach of contract claim. So there is or is not a contract? Well, it's a buyer-seller relationship. So there is a contract. We disagree. There is a contract. Okay. And what contract? Where do I find the contract? Well, we don't. There was a dispute below about whether the PlayStation Network terms of service and privacy policy constitute. Well, if that isn't the contract, then where do I look? Well, with all due respect, this contract stuff is a red herring, Your Honor. I don't — Well, it's not a red herring if there's a disclosure to the consumer that warrants the consumer that disclosures are going to be made in conformance with the statute. If you're concerned about the consent argument, the consent argument comes out of the PlayStation Network terms of service and privacy policy. And there's several reasons why that doesn't apply. First, it's never attached to a reference in the Second Amendment complaint. It's not appropriate for consideration. Well, I can understand why you would want to stay away from it. But we have to look at what Congress intended and what Sony can be legitimately held liable for under this statute. Why isn't it relevant what the consumer is told when they sign up for a PlayStation? Well, Your Honor, Frank, the — it may be relevant what they're told in an appropriate case, but it's not in this case. The terms of service and privacy policy don't permit the retention and disclosure of consumers — of customers' private viewing history here. Well, that assumes there's a private cause of action for that, right? Otherwise, it may or may not be relevant. Right. I agree. This case all comes down to whether there's a private cause of action. And for the reasons we discussed earlier, Mr. Rhodes talks about when reading the statute, avoiding surplusage or the internal logic of the statute or the totality of the language or avoiding absurdity. But the problem is none of those canons can trump plain language. And as Your Honors have recognized, this section means this section. They want to rewrite the statute.  So if you isolate a phrase that is on its face, clear and unambiguous, in a piece of legislation that is clearly ambiguous, your view of — your view of it is, is that we take that phrase in isolation. My position — But we've all — we've all agreed that we have to look at the entire — the entire statute. Yes, Your Honor. My position is the position held by the Supreme Court in Barnhart. Quote, when the words of a statute are unambiguous, this first canon — this first canon, plain language, is also the last. U.S. v. Ron Perrin. When the words of the statute are plain and unambiguous. Right. We've all acknowledged that's not the case here. I don't — I don't acknowledge that. I agree that — I believe that the words of the statute are clear. You can — you can find that there's a private cause of action reading just the words. To find that there's no private cause of action, you have to rewrite the statute, re — change the words. Counsel, do you acknowledge that every court that has addressed this issue has come down on the other side? The — the only two courts that — the only — Stirk is the only court that's addressed this question. And, yes, it's come down on the other side. I've explained why I think that's right. Are there no district courts that have addressed the issue? I don't — I don't believe that there are district courts. I'm not positive on that. I would have to double-check. And the Cantrell case cited any discussion of subsection E was dicta. That case was just about subsection D. So I don't think you can say that both the Sixth and Seventh Circuits have found against this. Okay. Counsel, your time has expired. Thank you very much. Thank you very much. The case just argued is submitted. Thank you, both sides, for your arguments.
judges: Tallman, Rawlinson, Dearie